Sutliff, J.
The proof is sufficient to show notice of whatever equities the complainants have in the 105J as between themselves and Henry S. Pavey, and perhaps as between themselves and the grantees of the 45 acres. There does not, however, appear to have been any notice, actual or constructive, to John Howe of their equities in the 61f acres in lot 5.
It becomes, therefore, necessary to first determine what equitable interest, if any, Samuel Gregory held under his contract in the lands in question.
The patent, it will be observed, conveyed the title of these lands by its terms, in effect only one-third to Edwin *278 Conway, and two-thirds to his wife, Mary J. The power of attorney executed by them to Charles Thornton, not having been acknowledged by her in accordance with either the statute of Virginia or of Ohio, was, as to her, utterly nugatory. The power of attorney can only be regarded as one executed by himself alone. But the contract was not entered into by Thornton; he constituted Winston his attorney to sell, and it was Winston who made and executed the contract with Gregory for the sale of the 167J acres of land. By force of the maxim that an attorney can not make an attorney, the contract so executed by Winston, was, when made, not obligatory upon Conway. But the proof shows that Conway recognized the agency of Winston, and ratified the contract by receiving the obligations executed by Samuel and William Gregory under it for the purchase money, and by recognizing Samuel’s possession of the land, and suffering him to make valuable improvements, and pay taxes upon it. Conway indeed received $251 of the purchase money upon the contract, and finally sold the obligations for the balance, and thus received the entire purchase money under the contract. The proof does not show whether or not the purchase money was shared by the wife in proportion to her interest in the land; nor whether she afterward executed another instrument .of writing, obligatory upon herself in relation to the sale of said land, from which the court, in 1840, decreed the validity of the sale of the land to Gregory, and his equity therein in favor of his trustee Jesse Pavey, as well against her as against her husband, Edwin Conway. But we have no doubt, after those acts of ratification of the contract of sale by Winston, as his agent, the contract became obligatory upon Conway, and gave as perfect an equity to Samuel Gregory in the land as if the contract had been executed by Thornton, his attorney in fact.
By means of the contract^ and the acts performed under it, and especially by force of the decree entered upon it in *279 favor of Pavey, the assignee and trustee of Gregory, the equity arising under this defective contract would be established, but for the previous sale of the same land to Shejjard, upon the judgment in his favor against Conway and wife, so rendered in Highland county.
What right, then, did Shepard acquire against the otherwise subsisting equity of Samuel Gregory, by his purchase of those lands at sheriff’s sale?
The sheriff’s deed of Oct. 23d, 1830, to Shepard, doubtless conveyed to him in fact the fee of the lands. His purchase was, however, made with full knowledge of; all the equities of Gregory’s heirs and trustee, existing under his contract of 1819, both against Conway and wife, and against Shepard himself. Shepard had read Gregory’s contract, and had seen that it purported to be a valid contract of sale of said land, and that Gregory had paid therefor, ten years previous, $251, a sum at that time much larger than the price at which he had then purchased in the same land with all the improvements, and that Conway and wife had also received the obligation of Gregory with personal security, and which had been sold, and probably fully realized by them, for the additional sum of $229.25; making the sum of $470.25, probably actually received by Conway and wife, as of 1819, for the lands so then bid in by him, Shepard, with all the improvements made thereon, at the price of $215.26. Shepard knew, too, at the time of bidding in the land, the fact that he had himself insisted upon the validity of the sale by Conway and wife to Gregory, at the time of obtaining the decree in Highland county, and that he obtained a confirmation of the report of the sale of these lands to Gregory, and obtained a money decree against Conway and wife and the other heirs of Francis Dade, based upon and correspondent to the high price at which these lands had been so purchased by Gregory. Shepard also knew of his afterward counseling Gregory and his wife and trustee, to make full payment of the purchase money, and to continue to pay *280 the taxes, assuring them that the title would be perfect under the contract upon such payment. Under this state of facts, as shown by the proof, we have no doubt that the title so acquired by Shepard, would, as between him and the heirs of Gregory, be held by him in trust for them under their contract; and that if, after the decree of the title from Conway and wife to the trustee Pavey, a petition had been filed for that purpose upon the foregoing state of facts, a court of chancery would have decreed a surrender of the title so held by Shepard to the heirs of Gregory.
To the foregoing view of the rights of Shepard, it might be urged that after his purchase at sheriff sale, in 1830, he was at least to be regarded as having thereby acquired all the rights of Conway and wife, and to have thereby become entitled to receive the residue of the purchase money under the Gregory contract still remaining unpaid, and which Pavey, the trustee, paid in 1837.
To this claim there are two answers. In the first place, apart from the slight proof of a mutual agreement between Shepard and Pavey, that Pavey should hold, by a perfect title, as trustee, the 105J acres in lot 4, and that he, Shepard, should have perfect title, under his sheriff' deed, to the 61§ acres in lot 5, there is no proof of notice to Pavey or the heirs of Gregory, that Shepard had bought the lands, or made any claim to them. And, in the second place, the purchase money, under the Gregory contract, was not paid by Pavey to Conway and wife, but to Samuel Winston, to whom they had sold the obligations given for the purchase money.
There is still another view to be taken of the relation of Shepard, under his purchase at the sheriff sale, to the claim of Gregory’s heirs under the deex’ee of 1840, of the title of Conway and wife to the trustee Pavey. Although Shepard had, in fact, by his bidding in the land upon his decx’ee, obtained the legal title to the 167J acx’es of land, he was, by his own acts and representations in relation to *281 the title derived from the decree of 1840, upon Gregory’s contract, estopped from setting up a title under his decree inconsistent with the recitals contained in that record as expressed by the report of the sale of the same lands to Gregory, upon which he had obtained his decree, and inconsistent with his conduct and representations mentioned, made to Gregory and his representatives.
The rule of law applicable to such cases is thus laid down by Lord Denman, in the case of Pickard v. Sears, 6 Ad. & Ell. 475: “Where one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.” And in delivering the judgment of the court in the case of Freeman v. Cook, 2 Exch. 654, Park, B., said that the rule laid down in the case of Pickard v. Sears, was “ to be considered as established, but that the term ‘willfully’ must be understood, if not that the party represents that to be the truth which he knows to be untrue, at least that he means his representation to be acted upon, and that it is acted upon accordingly; and if, whatever a man’s real meaning may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth.”
It is remarked by the commentator in Smith’s Leading Cases, vol. 2, p. 545, upon this subject, as follows: “ In the class of cases just noticed, the estoppel must obviously be limited within such bounds as are sufficient to put the party who has dealt on the faith of appearances that turn out to be incorrect, in the same position with reference to the author of such appearances as if they were true.” And again, the same author adds: “ The truth is, that the courts have been for some time favorable to the utility of *282 the doctrine of estoppel, hostile to its technicality. Perceiving how essential it is to the quick and easy transaction of business, that one man should be able to put faith in the conduct and representations of his fellow, they have inclined to hold such conduct and such representations binding, in cases where mischief or injustice would be caused by treating their effect as revocable. At the same time, they have been unwilling to allow men to be entrapped by formal statements and admissions, which were perhaps looked upon as unimportant when made, and by which no one ever was deceived, or induced to alter his position. Such estoppels are still, as formerly, considered odious.”
Under the reasonable application of the rule of estoppel as thus expressed, how stands this case ? In taking his decree, in 1822, Shepard had insisted upon the bona fide sale of these lands to Gregory, and, as stated, thereby obtained a money decree instead of a decree for the lands, which would doubtless have suffered Gregory to then have recovered back his $251, paid, and have prevented his expending thereafter, perhaps as large a sum in improvements. Again, after the decree was entered, if Shepard had not still continued to treat, by his acts and representations, the Gregory purchase as valid; if he had then treated these lands as unsold, and levied upon them, with other lands upon which he levied, for the satisfaction of his decree in 1822, the same result would have probably followed to Gregory; and he would even then have been able to recover back his $251, and have been prevented expending more in improving the land. But Shepard continued to treat the sale of these lands, by Conway and wife to Gregory, as valid; and even urged the payment of the residue of the purchase money, by assurances to the family and trustee, that the title would thereby be made perfect-under their contract. The trustee, subsequently to these representations and the conduct' of Shepard, proceeded, while in possession of the 105J acres at least, and *283 without any notice from Shepard (except as stated), to pay off the residue of the purchase money for the land, and to obtain a decree of title under the contract, as Shepard had assured them they could do, on so paying the purchase money.
It seems to me, under these circumstances, if Shepard had attempted to recover the lands, against the decree title of Pavey under the Gregory contract, a reasonable application of the doctrine of estoppel would have prevented his asserting title under his sheriff’s deed.
But if it be insisted that J esse Pavey had notice of the fact of Shepard’s levy and purchase of the lands, before paying up the residue of the purchase money, it may be remarked, that the only proof of such notice is the statement of a witness who speaks of a mutual understanding, by which Pavey was to hold the 105|- acres, and Shepard the 61f- acres. And if it be objected to the reasonableness of such an arrangement, that Pavey suffered Shepard to receive a sheriff’s deed for all the land,' it maybe replied, that the approval of the sale and deed were made in Highland county. It may be further replied, that Shepard suffered Pavey to take a decree in Eayette county for all the land; so that the conduct of each party is equally opposed, in those acts, to the supposition of either intending to set up an adversary claim against that of the other.
The most favorable view, however,, which can be taken of the title acquired under Shepard’s sheriff" deed, is that upon which the parties, Shepard and Pavey, seem to have acted, in the occupancy of the land, to wit, that Shepard was to claim only the 61f acres in lot 5, and that Pavey was to hold the -105| acres in lot 4. And as Howe is a purchaser without notice, for a valuable consideration, we' are disposed to give effect to this view of the case by dismissing the petition as to him, but without costs.
It no where appears what amount Jesse Pavey paid, in satisfaction of the obligations held by Winston for the purchase money. It seems to be regarded as only between *284 two and three hundred dollars. Nor is the value of the land by him conveyed to the children of his son Jesse, shown by the proof. But as there is no proof of his having acted in bad faith, and it is proved that, shortly previous to his death, Jesse Pavey, after conveying the 45 acres to his other grandchildren, contemplated conveying the residue of the land in lot 4 to the heirs of Samuel Gregory, as the amount of land, in his opinion, justly belonging to them, and supposing this to have been, in his estimation, from his knowledge of the amount he had paid "Winston, to be a just apportionment to them of their father’s interest in the land, we are disposed, as between his estate and complainants, to give effect to this expression of his opinion and intention.
The purchases of the Shepard title, by Henry S. Pavey, having been made — of the 45 acres while in possession of his father, Jesse Pavey, and of the 60J acres while in the actual possession of the complainants — he had constructive notice of all the claims and equities, to which we give effect, arising under the Gregory title. It is also proved that ITenry S. had actual notice of the rights of the heirs of Gregory, his brother-in-law, and of his father, Gregory’s trustee, in the lands in question. He could not, therefore, acquire any right in the premises by his purchase of the Shepard title.
A decree may, therefore, be entered in favor of complainants as to all the lands in lot 4, except the 45 acres conveyed by Jesse Pavey to Ellen and Susan Maria Pavey, and that Henry S. Pavey be perpetually enjoined from proceeding upon his judgment in ejectment against them, and that they recover of him their costs, to be paid in thirty days; and as to all other parties, the bill may stand dismissed without costs.
Bartley, O. J., and Swan, Brinkerhoee and Scott, JJ., concurred.